# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | : | MDL Docket No. 1426 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | **ORAL ARGUMENT** |
| *Atlantic Auto Collision, Inc. v. PPG Indus., Inc.* | : | **REQUESTED** |
| Case No. 2:06-cv-02784-RBS | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## TABLE OF CONTENTS

Table of Authorities..................................................................................................iii

Argument

I. The Antitrust Claim Is Legally Sufficient ..............................................................1

II. There Is No Bar To A Donnelly Act Class Action In Federal Court ........................4

 A. Federal Courts Are Obligated to Follow The Federal Rules of Civil
  Procedure in Diversity Cases. ........................................................................4

 B. Federal Rule of Civil Procedure 23 Covers The Question of Whether A
  Class Action May Be Brought in Federal Court............................................6

 C. Section 901(b) Is Not Substantive Law That Must be Followed Under
  Erie. .................................................................................................................7

 D. CPLR §901(b) Does Not Bar Antitrust Class Actions for
  Treble Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

  1. Section 901(b) Applies To Actions for Statutory
   Penalties Not Damages-Based Recoveries....................................11

  2. An Action Under the Donnelly Act for Treble Damages
   is Not an Action "Under a Statute Creating
   or Imposing a Penalty.".................................................................12

  3. The Legislative History of Both CPLR §901(b) and the Donnelly
   Act Amendment Makes Clear §901(b) Was Not Intended
   to Bar Antitrust Treble Damages Actions .....................................14

  4. Under Antitrust Law, the Treble Damage Remedy Is
   Damages-Based and Not Considered a Penalty. ...........................16

III. The Donnelly Act's Statute of Limitations Should Be Tolled under the
  Doctrine of Fraudulent Concealment.....................................................................19

IV. The 1998 Donnelly Act Amendment Permits Recovery for Conduct
  That Preceded its Enactment...................................................................................20

 A. GBL § 340(6) Permits Indirect Purchasers to Recover All Damages
  Regardless of Whether It Is Considered Retroactive. .................................20

 B. Alternatively, §340(6) Should Be Given Retroactive Effect
  As A Remedial Statute.................................................................................21

V.    Plaintiff's §349 Claim is Sufficient .......................................................................24

Conclusion .........................................................................................................................26

## TABLE OF AUTHORITIES

Federal Cases

*Aguinda v. Texaco, Inc.,* 142 F. Supp. 2d 534 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bertha Building Corp. v. National Theaters Corp.,* 269 F.2d 785
(2d Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17

*Bennett v. Schmidt,* 153 F.3d 516 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Blaz v. Belfer,* 368 F.3d 501, 504 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477 (1977) . . . . . . . . . . . . . . . . . . . . . . 17,18

*Burlington Northern R. Co. v. Woods,* 480 U.S. 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.,* 356 U.S. 525 (1958) . . . . . . . . . . . . . . . . . . . 9

*Chattanooga Foundry & Pipe Works v. City of Atlanta,* 203 U. S. 390 (1906) . . . . . . . . . . 13,17

*Com/Tech Commun. Techs. v. Wireless Data Sys.,* 163 F.3d 149 (2d Cir. 1998) . . . . . . . . . . 5, 7

*Commonwealth Edison Co. v. Allis Chalmers Manuf. Co.,*
210 F. Supp. 557 (N.D. Ill. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Englander Motors, Inc. v. Ford Motor Co.,* 293 F.2d 802 (6th Cir. 1961) . . . . . . . . . . . . . . . . . 17

*Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7,8

*Ethicon, Inc. v. Aetna Cas. & Sur. Co.,* 737 F.Supp.1320 (S.D.N.Y 1990) . . . . . . . . . . . . . . . . 18

*Frazar v. Gilbert,* 300 F.3d 530, 545 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Freund v. Nycomed Amersham,* 347 F.3d 752 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Frew v. Hawkins,* 540 U.S. 431 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*FTC v. Motion Picture Adver. Servs. Co., Inc.,* 344 U.S. 392 (1953) . . . . . . . . . . . . . . . . . . . . 24

*Gasperini v. Center for Humanities Inc.,* 518 U.S. 415 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 4,9

*Hanna v. Plumer,* 380 U.S. 460 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7,9

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hydrolevel Corp. v. American Soc. of Mechanical Engineers, Inc.*,
635 F.2d 118 (2d Cir. 1980), aff'd. 456 U.S. 556. 102 S.Ct. 1935 (1982) . . . . . . . . . . . . . . . . 17

*In re Antibiotic Antitrust Actions.* 333 F. Supp. 317 (S.D.N.Y. 1971) . . . . . . . . . . . . . . . . . . . . 24

*In re Automotive Refinishing Paint Antitrust Litigation.* MDL Dkt.1426
(E.D. Pa May 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,18.19

*In re Bath & Kitchen Fixtures Antitrust Litig.*, 2006 U.S. Dist.
LEXIS 49576 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Equity Funding Corp. of Am. Secs. Litig.*, 1976 U.S. Dist.
LEXIS 17364,*14 (D. Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re NASDAQ Market-Makers Antitrust Litigation*, 894 F.
Supp. 703 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Relafen Antitrust Litig.*. 221 F.R.D. 260 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . 7 n.3

*Leh v. Standard Oil of California*, 330 F.2d 288 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Leider v. Ralfe*, 2005 U.S. Dist. LEXIS 945 (S.D.N.Y.. January 25. 2005) . . . . . . . . . . . . . 7 n.3

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*. 2005 U.S. App.
LEXIS 17151 (3d Cir. May 5, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*M&T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . 25

*Mace v. Van Ru Credit Corp.*. 109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McGuirk v. City School Dist.*, 116 A.D.2d 363, 365-366 (3d Dept. 1986) . . . . . . . . . . . . . . . . 23

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) . . . . . . . . . . . . . . 18

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . 24.25

*Russo & Dubin v. Allied Maintenance Corp.*, 95 Misc. 2d 344. 348
(N.Y. Misc. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sterling v. Velsicol Chem. Corp.*. 855 F.2d 1188 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Times-Picayune Publ'g Co. v. United States*. 345 U.S. 594 (1953) . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Dentsply Int'l, Inc.*. 2001 U.S. Dist. LEXIS 9057 (D. Del. 2001) . . . . . . . . . 7 n.3

*United States v. St. Regis Paper*, 285 F.2d 607 (2d Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Verizon Directories Corp. v. Yellow Book USA. Inc.*,
338 F. Supp. 2d 422 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Walker v. National Recovery. Inc.*, 200 F.3d 500 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>State Cases</u>

*Bogartz v. Astor*, 293 N.Y. 563, 59 N.E.2d 246 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Busch v. Austin Co.*. 37 A.D.2d 648 (3d Dept. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cady v. County of Broome*. 87 A.D.2d 964 (3d Dept. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 22,23

*Council of City of New York v. Giuliani*. 93 N.Y.2d 60. 687
N.Y.S.2d 609 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cox v. Lykes Bros.*. 237 N.Y. 376. 143 N.E. 226 (1924) . . . . . . . . . . . . . . . . . . . . . . . 13,17.24.25

*Deutsch v. Catherwood*, 31 N.Y.2d 487 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In the Matter of Arnold M. Asman v. Ambach*. 64 N.Y.2d 989 (1985) . . . . . . . . . . . . . . . . . . . . 22

*Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*,
89 N.Y.2d 786. 658 N.Y.S.2d 903 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mendler v. Federal Ins. Co.*, 159 Misc. 2d 1099. 607 N.Y.S.2d 1000
(N.Y. Sup. Ct. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pruitt v. Rockefeller Center Properties, Inc.*.
167 A.D.2d 14. 574 N.Y.S.2d 672  (1st Dept. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sperry v. Crompton Corp.*, 26 A.D.3d 488. 810 N.Y.S.2d 498 (2d Dept.) . . . . . . . . . . . 4 n.2. 11

*Sicolo v. Prudential Sav. Bank of Brooklyn*,
5 N.Y.2d 254, 184 N.Y.S.2d 100 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

*XLO Concrete Corp. v. Rivergate*, 83 N.Y.2d 513, 611 N.Y.S.2d 786 (1994) . . . . . . . . . . . . . . 16

Other Sources

Article 12 of New York Navigation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Class Action Fairness Act. 28 U.S.C. 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 10 n.5

CPLR §214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13

CPLR§901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

CPLR §3213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CPLR §5020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.6

CPLR §7202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Donnelly Act, GBL§340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,14 n.7, 15,16,17,19,20,24,25

Federal Rule of Civil Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Civil Procedure 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Appellate Procedure 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Appellate Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6,7.8,9,10

Federal Rule of Appellate Procedure 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Trade Commission Act. 15 U.S.C. §45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

GBL §209d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.6

GBL §342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

GBL §349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24.25

N.Y. Statutes §78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Navigation Law §121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.6

Rules Enabling Act, 28 U.S.C. §2072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. §1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiff, Atlantic Auto Collision Inc. respectfully submits this Memorandum of Law in opposition to Defendants' two motions to dismiss – one filed by Defendants E.I. Dupont de Nemours & Co., Dupont Performance Coatings, Inc., Akzo Nobel Inc., Akzo Nobel Coatings Inc., and BASF Corporation, which all have already settled the direct purchaser claim pending before this Court, and one filed by Defendants Sherwin Williams Inc., and PPG Industries Inc., which at the time of the motion had not settled the direct purchaser action.[1] Both motions raise essentially the same arguments and accordingly, Plaintiff will respond to both motions in this Memorandum.

Some of Defendants' arguments have already been rejected by this Court. None of Defendants' arguments have merit and this Court should allow this action to proceed.

## ARGUMENT

I.      THE ANTITRUST CLAIM IS LEGALLY SUFFICIENT.

Even though the complaint in this action is virtually identical to the complaint in the direct purchaser action before this Court and even though this Court denied Defendants' motion to dismiss in the direct purchaser action, and even though Rule 12(b)(6) dismissals are disfavored by courts in antitrust cases, Defendants persist in their claim that Plaintiff's allegations do not state a claim.

This Court has already set forth the standards for deciding whether a complaint is legally sufficient.  In denying Defendants' motion to dismiss the direct purchaser complaint, this Court

---

[1] It appears that since the time the motion was made on August 22, 2006, PPG Industries Inc. has agreed to settle the direct purchaser claim. See
http://corporateportal.ppg.com/PPG/Newsroom/FinancialNews/09272006.htm.

noted that a complaint should be dismissed as legally insufficient only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In Re Automotive Refinishing Paint Litigation*, MDL Docket No. 1426 at 1 (E.D. Pa May 16, 2002). This Court rejected Defendants' argument, repeated here, that Plaintiffs must allege "who made the statements, where, when, or to whom," stating that "it was sufficient" for the direct purchaser plaintiffs to have alleged "the participants in the conspiracy and their purpose." Id. at 2-3. This Court noted that pleading requirements are less strenuous where, as here, Plaintiffs have alleged a price-fixing conspiracy – a per se antitrust violation – as opposed to a exchange of information or other non-per se violation. Id. at 3-4.

This Court was correct in not imposing heightened pleading standards on the direct purchaser plaintiffs. Indeed, because of the difficulty of gathering evidence prior to discovery in an antitrust case, courts are especially reluctant to dismiss antitrust pleadings prior to discovery. As the Supreme Court of the United States stated, in antitrust cases, where "the proof is largely in the hands of the alleged conspirators ... dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976). Courts have not imposed a requirement that the facts, the theory of recovery, or the individual acts of each defendant be spelled out. *See Walker v. National Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999); *Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998); *In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703, 712-713 (S.D.N.Y. 1995).

Like the direct purchaser plaintiffs, Plaintiff has alleged "the participants in the conspiracy and their purpose." Plaintiff has alleged that Defendants participated in a pricefixing conspiracy from 1993 until the present. If Plaintiff is able to prove that such a pricefixing

conspiracy existed – that is, establish a "state of the world consistent with the complaint," *Hishon v. King & Spalding*. 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984), Plaintiff would clearly be entitled to relief.

Defendants do not seriously attempt to distinguish this Court's decision based on the differences between the direct purchaser complaint and the complaint here.   Although the direct purchaser plaintiffs did include the evidentiary detail the Defendants had met in Europe and that the price of automotive refinishing paint increased while the price of raw materials decreased, this Court did not hold that those allegations were necessary to the sufficiency of the direct purchaser complaint or the Court's decision.  Neither an inverse relationship between prices and raw materials nor an in person meeting in Europe is a prerequisite for a pricefixing conspiracy. Similarly while Defendants apparently believe improbable the allegation in Plaintiff's complaint that the conspiracy continued after the time the Department of Justice began its investigation – an allegation not made by the direct purchser plaintiffs – improbability is not a basis for 12(b)(6) dismissal.

Instead, Defendants attempt to convince this Court to abandon its earlier holding and adopt the reasoning of the district court in *In re Bath & Kitchen Fixtures Antitrust Litig.*. 2006 U.S. Dist. LEXIS 49576 (E.D. Pa. 2006).  In that case, the court held that an antitrust complaint was not sufficient unless it set forth the factual background underlying the claim.  The case is incompatible with this Court's earlier decision and the applicable law and should be rejected.

In the alternative, this Court should dismiss Plaintiff's claim with leave to amend the complaint to add the allegations made by the direct purchaser plaintiffs and which have previously been held sufficient by this Court.

-3-

II.   THERE IS NO BAR TO A DONNELLY ACT CLASS ACTION IN FEDERAL
      COURT

This Federal Court follows the Federal Rules of Civil Procedure – not New York law -- in

determining procedural issues such as whether the class action procedural device is appropriate.

Rule 23 provides that any case within the federal court's jurisdiction may be litigated as a class

action so long as the Rule's criteria are satisfied.  New York law can no more command this

Court to refrain from conducting this case as a class action than it could direct that all Donnelly

Act cases be conducted as class actions regardless of whether certification would be appropriate

under Rule 23.  Finally, if the Court holds that state procedural laws such as CPLR 901(b) apply

in federal court, this Court should defer its decision on this issue to await the decision of the New

York Court of Appeals which has agreed to hear a case on the applicability of §901(b) to

antitrust class actions for treble damages.[2]

A.   Federal Courts Are Obligated to Follow The Federal Rules of Civil Procedure in
     Diversity Cases.

Under the doctrine established in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188,

58 S. Ct. 817 (1938), federal courts sitting in diversity cases must apply state substantive law,

while procedural questions must be determined by federal law. While it is at times "challenging"

to determine whether a particular legal question is substantive or procedural, *Gasperini v. Center

for Humanities Inc.*, 518 U.S. 415,427 (1996), where the matter in question is covered by the

_____

[2]  The Court of Appeals of New York case is Sperry v. Crompton Corp..  The decision of
the intermediate appeals court is at  26 A.D.3d 488, 810 N.Y.S.2d 498 (2d Dept. 2006).  The
Court of Appeals granted leave to appeal at 7 N.Y.3d 706 (2006).  There is, of course, no need
for this Court to reach the issue of whether a class action is viable at this stage of the proceeding.
This Court could simply wait for a motion for class certification at which time the Court of
Appeals may have rendered its decision.

Federal Rules of Civil Procedure, the inquiry is straightforward. So long as the Federal Rule of Civil Procedure is constitutional and validly promulgated within the strictures of the Rules Enabling Act, 28 U.S.C. §2072, "the Federal Rule applies notwithstanding contrary state law." *See Hanna v. Plumer,* 380 U.S. 460, 469-474, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965); *Burlington Northern R. Co. v. Woods,* 480 U.S. 1, 4-5, 94 L. Ed. 2d 1, 107 S. Ct. 967 (1987).

As a result, federal courts sitting in diversity have consistently applied the Federal Rules and rejected contrary state law where a Federal Rule is on point. *See Hanna,* 380 U.S. at 463 (FRCP 4 governing service of process trumped Massachusetts statute with stricter requirements for service on an executor); *Burlington Northern R. Co.* (Federal Rule of Appellate Procedure 38 providing for discretionary imposition of costs trumped Alabama statute providing for mandatory ten percent affirmance penalty); *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 2005 U.S. App. LEXIS 17151 (3d Cir. May 5, 2005)(FRCP 19 regarding joinder trumps Pennsylvania law requiring that injured claimants be considered indispensable parties in insurance coverage declaratory judgment actions). *See also Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988)(applying federal procedural statute, 28 U.S.C. §1404(a), to determine whether a contractual forum selection clause should be enforced and disregarding state law which renders such clauses unenforceable).

The fact that application of the federal procedural standard will have a substantive effect on the litigation does not change the analysis. In *Com/Tech Commun. Techs. v. Wireless Data Sys.,* 163 F.3d 149 (2d Cir. 1998), the plaintiff had brought an action to collect on promissory notes in New York state court. The plaintiff had brought the action by use of a procedural device, a motion for summary judgment in lieu of complaint under CPLR §3213. That section was intended to permit a "quick and simple" method. 163 F.3d at 150. for recovery of sums certain.

The defendant removed the case to federal court on diversity grounds and sought an order from the federal court requiring the plaintiff to replead its allegations in the form of a complaint and to permit the filing of counterclaims. which are not permitted under the New York summary procedure. Although the district court denied the defendant's request. the Court of Appeals reversed. The Second Circuit held that the "regime of the Federal Rules replaced that of § 3213," Id., and that accordingly FRCP 13(a), which provides that a defendant may raise "any claim against an opposing party" in a counterclaim. governs the issue. The case was remanded to permit the defendant to assert its counterclaims. The defendant accordingly gained a clear advantage in the litigation by removing it to federal court.

     B.     Federal Rule of Civil Procedure 23 Governs Whether A Class Action May Be Brought in Federal Court.

Under these principles. it is clear that FRCP 23, which provides that any case under the proper jurisdiction of the federal courts may be litigated as a class action providing that the Rule's criteria are met. governs the question of whether this case qualifies for class action status.

After almost 40 years of use since its promulgation in 1966. it cannot be seriously contended that Rule 23 was not properly promulgated under the Rules Enabling Act. *Cf In re Equity Funding Corp. of Am. Secs. Litig..* 1976 U.S. Dist. LEXIS 17364,*14 (D. Cal. 1976)(holding that "[a]lthough the validity of Rule 23 was not directly decided by the Supreme Court, the Court's rulings on other class action issues presuppose the validity of the Rule.").

It is also clear that Rule 23 covers the issue here. Rule 23(b) provides that "[a]n action may be maintainable as a class action if [the prerequisites of subsections (a) and (b) are satisfied]." Rule 23 does not include any requirement that the underlying cause of action fall

within or without any category of claims. Accordingly, it conflicts with and displaces CPLR 901(b) which imposes an additional requirement for a class action – that the cause of action not be one which imposes a penalty unless the statute providing the cause of action authorizes class action.[3]

      C.     Section 901(b) Is Not Substantive Law That Must be Followed Under *Erie*.

Defendants argue that this Court should consider the forum shopping effect of application of disregarding §901(b) in favor of Rule 23. But under *Erie* jurisprudence, forum shopping effect is only relevant where there is no federal rule directly on point and the court must undertake what is considered an "unguided" Erie analysis. *Hanna v. Plumer*, 380 U.S. 460, 467-68, 471, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965).[4] This is clear from a series of cases cited in which the federal procedural rule provided one side or another a distinct advantage in federal court. *See Com/Tech Commun. Techs. v. Wireless Data Sys.*, 163 F.3d 149 (2d Cir. 1998)(federal rule applied which permitted counterclaims which would be barred in removed state court proceeding); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)(federal rule enforced which provided for waiver of objection to punitive damages award over contrary state law).

---

    [3] *Leider v. Ralfe*, 2005 U.S. Dist. LEXIS 945,*14-*15 (S.D.N.Y., January 25, 2005); *United States v. Dentsply Int'l, Inc.*, 2001 U.S. Dist. LEXIS 9057 (D. Del. 2001); and *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 285 (D. Mass. 2004) relied on by Defendants, are all simply wrong on this point. These district court posit that Rule 23 "merely establishes the procedures for pursuing a class action in the federal courts." This is not true. Rule 23 also creates the class action procedural vehicle and directs that cases be conducted as class actions in the appropriate circumstances.

    [4] The unguided *Erie* analysis looks at whether the outcome of the litigation would change based on the choice of the federal and state forum "while also relying on the policies underlying the Erie rule: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.*

Even if the issue is considered within the substance vs. procedure context that was at the heart of the original *Erie* decision, or in terms of whether application of Rule 23 to void §901(b) would expand substantive rights in violation of the Rules Enabling Act, §901(b) should still be disregarded.

First, whether a case is litigated as a class action is a question of procedure. A class action is simply a procedural device. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980). *See Frazar v. Gilbert*, 300 F.3d 530, 545 (5th Cir. 2002) ("A class action is merely a procedural device: it does not create new substantive rights...."), *rev'd on other grounds, Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 157 L. Ed. 2d 855, 124 S. Ct. 899 (2004); *Blaz v. Belfer*, 368 F.3d 501, 504 (5th Cir. 2004)(availability of class action not a substantive right); *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 540-541 (S.D.N.Y. 2001)("class action nothing more than convenient procedural device.")(internal cites omitted). New York state law considers, for whatever reason, this procedural device inappropriate in actions to recover a penalty. Federal law, in contrast, considers the procedural device appropriate for all cases that meet the Rule 23 criteria.

The 7th Circuit's decision in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) is instructive. There a federal district court refused to certify a class action under Wisconsin law on the ground that Wisconsin's class action statute, like New York's, imposed a requirement not found in Rule 23. The requirement under Wisconsin law was that the plaintiff provide 30 days notice to the defendant before commencing the action. The district court characterized the notice requirement as an "integral part of [the] state substantive statute." 109 F.3d at 346. The Court of Appeals reversed and disregarded the state notice requirement on the ground that the notice provision "does not grant or deny a substantive right (the right to sue under the [state statute])." It

-8-

instead "affects the period within which that right can be exercised." Id.

A close analysis of the interests at stake in this case shows why the result should be the same here. Section 901(b) will not determine whether Atlantic Auto Collision Inc., the plaintiff in this action, or any other member of the class will be able to assert a Donnelly Act claim against defendants or the extent of any recovery. Rather §901(b) would determine what procedural vehicle would be used to litigate the claim – one class action or several individual actions. Ultimately, what is at stake is the procedure that will be followed and whether the efficiencies and economy of a class action will be realized. *See Sterling v. Velsicol* Chem. Corp., 855 F.2d 1188, 1196 (6th Cir. 1988)( "[t]he procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense [class action litigation brings]").

Second, even if the §901(b) bar is considered partially substantive, it is settled that

the constitutional provision for a federal court system . . . carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."

*Hanna v. Plumer,* 380 U.S. at 472.

It is especially important for the federal rule to apply when it impacts on an essential characteristic of the federal court system. In *Gasperini v. Center For Humanities, Inc.,* 518 U.S. 415 (1996), the Supreme Court refused to direct the Second Circuit to utilize New York's standard for appellate review of the size of verdicts because to do so would alter the "essential characteristic" of abuse of discretion review of district court decisions by appellate courts. *Id.* at 431-432. The *Gasperini* Court relied on *Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.,* 356

U.S. 525, 537 (1958) in which the Supreme Court, based on the importance of a jury trial to the federal court system, held that a litigant suing in federal court was entitled to a jury trial even if one would not be available in state court for the same cause of action.

If there was any doubt that application of Rule 23 to state law class actions brought or removed to federal court was an essential characteristic of the federal court system, it was eliminated by passage of the Class Action Fairness Act, 28 U.S.C. 1332(d). That provision, enacted earlier this year, provides federal court jurisdiction for virtually all state law class actions.[5] It was enacted in part to end the perceived problem of anomalies in the way class actions were considered from state to state. It would surely defeat the purpose of this statute for state laws to dictate how and whether cases are litigated as class actions. If state law can bar the use of the class action procedural device in certain types of cases, as Defendants contend this Court should hold, what is to prevent states from requiring that certain cases must be litigated as class actions regardless of the applicability of the Rule 23 criteria.

Accordingly, this federal court should use federal procedural rules to determine the proper procedural vehicle for this action and not permit state law to determine federal court procedure.

D.      CPLR §901(b) Does Not Bar Antitrust Class Actions for Treble Damages.

In exercising its diversity jurisdiction and ruling on issues of state law, the inquiry for this Court is to determine what the position of the state's highest court is and if the highest court has

---

[5] The statute provides for federal court jurisdiction where "the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interests and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant. . . ." 28 U.S.C. §1332(d)(2).

not ruled on a particular question, what the position would be. While several lower courts in New York have held that CPLR §901(b) bars antitrust class actions, those decisions are not binding on this Court. The New York Court of Appeals has not yet reached the issue. It has, however agreed to consider it in a pending case, *Sperry v. Crompton Corp.*, 26 A.D.3d 488, 810 N.Y.S.2d 498 (2d Dept.), *motion to appeal granted.* 7 N.Y.3d 706, 819 N.Y.S.2d 873 (2006).

This Court should either defer its decision on this issue until the Court of Appeals decision or rule in Plaintiff's favor now. As set forth below, there is overwhelming support for the position that §901(b) does not apply to antitrust class actions. Accordingly, this Court should find that the Court of Appeals would permit antitrust class actions under New York law, notwithstanding the lower court decisions to the contrary.

1.    Section 901(b) Applies To Actions for Statutory
      Penalties Not Damages-Based Recoveries.

CPLR §901(b) provides as follows:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

In referring to "an action to recover a penalty . . . created or imposed by statute," the Legislature had something specific in mind. The CPLR provides for a specific cause of action to recover a statutory penalty. CPLR §7202 provides that "where a penalty or forfeiture is given by a statute to a person aggrieved by the act or omission of another, the person aggrieved may commence an action to recover it." CPLR §214(2) provides that such an "action to recover upon a penalty . . . created or imposed by statute" is subject to a three year limitation period. Several

-11-

New York statutes explicitly provide for such "penalties."[6] These are the "penalties" to which §901(b) refers.

> 2.     An Action Under the Donnelly Act for Treble Damages is
> Not an Action "Under a Statute Creating or Imposing a Penalty."

New York courts have analyzed whether a statute imposes a penalty by "look[ing] primarily to the statute's description of the recovery it authorizes." *Pruitt v. Rockefeller Center Properties, Inc.*, 167 A.D.2d 14, 27, 574 N.Y.S.2d 672, 679 (1st Dept. 1991). The Donnelly Act, by its very terms, characterizes the action that Plaintiff has brought as an "action to recover damages," and provides that a plaintiff "shall recover three-fold the actual damages sustained." GBL §340(5). There is no reference to a "penalty." Notably, where the Legislature did provide for "a penalty" for violation of the Donnelly Act, it clearly indicated as such. For instance, GBL §341 provides for criminal penalties of up to four years in prison and a $1 million fine for anti-competitive activity and GBL §342(a) provides for a civil action, brought by the Attorney General, "to recover a penalty in the sum [of $1 million]."

The Donnelly Act's statute of limitations also makes clear that an action to recover treble damages sustained is not an action to recover a penalty. Unlike actions to recover a statutory penalty, which are subject to a three year limitation period, a Donnelly Act treble damages action is subject to a four year limitations period. GBL §340(5).

The argument that treble damages under the Donnelly Act must be a penalty within the

---

[6]  See, e.g., GBL §209d ($10 penalty for violation of hotel registration requirements); Labor Law §390 ($100 penalty for unlawful deduction for benefit fund); Navigation Law §121 ($50 penalty for obstruction of navigable river or stream); Railroad Law §182 ($50 penalty for unlawful collection of fare); CPLR §5020(c)($50 penalty for failure to record satisfaction of judgment).

meaning of §901(b) because a defendant is compelled to pay an amount in excess of a plaintiff's actual damages has been consistently rejected by New York Court of Appeals.

In *Cox v. Lykes Bros.*, 237 N.Y. 376, 143 N.E. 226 (1924), the Court of Appeals held that an action under a statute authorizing a seaman to sue for double wages was not an action for a penalty. Similarly, in *Bogartz v. Astor*, 293 N.Y. 563, 59 N.E.2d 246 (1944), the Court of Appeals held that a statute providing for the payment to a minor of double workers' compensation benefits was not a penalty. Notably, and in what should be determinative of the Court of Appeals' position on this question in itself, the Court of Appeals in *Cox v. Lykes Bros.* cited *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U. S. 390 (1906) for the proposition that "an action under the anti-trust law for the recovery of treble damages" was "exclud[ed] from the class of penalties." 237 N.Y. at 379.

The difference between a "penalty" and a liability for redressing a private injury, such as suffered by Plaintiffs here, was explored by the Court of Appeals in *Sicolo v. Prudential Sav. Bank of Brooklyn*, 5 N.Y.2d 254, 258, 184 N.Y.S.2d 100, 103 (1959). There, the Court of Appeals addressed the issue of whether an action under a statute providing a minimum recovery of $1000 to a fireman injured through the negligence of a property owner constituted an action upon a statute for a penalty and therefore subject to the shorter statute of limitations under the predecessor section to CPLR §214. The Court of Appeals, in ruling that the action was not a penalty action, stated that "[t]he words 'penalty or forfeiture' . . . refer to something imposed in a punitive way for an infraction of a public law and do not include a liability created for the purpose of redressing a private injury . . . [even where] recovery may exceed in some instances the actual loss."

-13-

3.     The Legislative History of Both CPLR §901(b) and the Donnelly Act
       Amendment Makes Clear §901(b) Was Not Intended
       to Bar Antitrust Treble Damages Actions.

When the Legislature enacted §901(b). it did not include in §901(b) a separate restriction

of class actions involving a recovery of multiple damages the way it did for recoveries of

minimum damages.  The Legislature was also presumably aware of the line of cases discussed

supra holding that multiple damage awards were not considered penalties.  These cases included a

Second Circuit case, *Bertha Building Corp. v. National Theaters Corp.*, 269 F.2d 785 (2d Cir.

1959), in which the federal Court of Appeals held, based on *Sicolo,* that under New York law, a

federal antitrust treble damages action was not an action for a penalty imposed by statute.

Furthermore, the legislative history of the indirect purchaser amendment to the Donnelly

Act makes clear that §901(b) was not intended to apply to antitrust class actions.

In the Assembly debate over the amendment,[7] the following colloquy occurred between

Assemblyman Brodsky, the sponsor of the amendment, and Assemblyman Straniere:

MR. STRANIERE:    So. this, in effect. allows an individual citizen--

MR. BRODSKY:      Yes.

MR. STRANIERE:    – or group -- or a class action by a group of citizens --

---

[7] There were actually two indirect purchaser amendments to the Donnelly Act.  The first.
enacted in December 1998, added almost all of what is now GBL §340(6). L.1998. c. 653. §1.
The second amendment, enacted with little debate or comment in April 1999. added an additional
sentence to the new subsection (6):
> In actions where both direct and indirect purchasers are involved, a defendant shall be
> entitled to prove as a partial or complete defense to a claim for damages that the illegal
> overcharge has been passed on to others who are themselves entitled to recover so as to
> avoid duplication of recovery of damages.
L. 1999. c. 31, §1.  All references to legislative history are to materials related to the first of the
amendments.

-14-

MR. BRODSKY:      Yes.

MR. STRANIERE:      – to be able to go in and allege a violation and prove damages.

MR. BRODSKY:      Yes. . . . [8]

After passage of the amendment by a wide margin in the Assembly and unanimously in the

Senate. Senator Lack wrote the Governor urging its approval.  His letter discusses a decision in an

antitrust class action against the brand-name pharmaceutical manufacturer Abbott Laboratories, in

which a New York court dismissed the case on the ground that there was no standing under the

Donnelly Act for indirect purchasers,  and continues:

> The need for this legislation has been further reinforced by an
> additional recent case involving copper market manipulation [also a
> class action], which left several small New York businesses without
> recourse.  These cases, the copper and brand-name drug cases,
> which together have been settled for over $100 million, have left
> New Yorkers on the sidelines with little or no recourse to recoup the
> staggering overpayments they have made for these goods....  This
> measure will grant New York indirect purchasers standing in
> actions for antitrust violations and therefore, I respectfully urge
> Governor Pataki to approve it.[9]

Opponents of the amendment to the Donnelly Act recognized that it would result in

indirect purchaser antitrust class actions.  The Business Council of New York State wrote the

Governor's Counsel that the amendment "simply provides an additional and unnecessary avenue

for litigation of consumer class actions."[10]  Despite this objection, the Governor signed the

---

[8]  Assembly Debate Transcripts. 1998, c. 653, at 34. This transcript is attached to the
Solotaroff Affirmation as Exhibit B.

[9]  Letter to Hon. James McGuire, Counsel to the Governor, December 17. 1998 (attached
as Exhibit C to the Solotaroff Affirmation).

[10] Letter to Hon. James McGuire. Counsel to the Governor. November 18. 1998 (attached
as Exhibit D to the Solotaroff Affirmation).

amendment and it became law.

Statutory interpretation by the courts is governed by N.Y. Statutes §78. It provides that "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature." See also *Council of City of New York v. Giuliani*, 93 N.Y.2d 60.69, 687 N.Y.S.2d 609,613 (1999) (restating that in statutory interpretation "the spirit and purpose of the act and the objects to be accomplished must be considered [and] [t]he legislative intent is the great and controlling principle.").

The 1998 amendment, along with its legislative history, is strong evidence that the Legislature knew that as a matter of both New York law and federal antitrust law, antitrust treble damages do not constitute a penalty and were not subject to the restrictions of CPLR §901(b). The Court of Appeals has authorized the use of an amendment to a statute "to divine the legislative intent with regard to the original law." *Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 786,796, 658 N.Y.S.2d 903. 908 (1997). By clearly intending to provide for class actions, but not explicitly indicating as such. the Legislature was simply operating on the assumption that §901(b) did not apply to class actions under the Donnelly Act.

4.    Under Antitrust Law, the Treble Damage Remedy Is
      Damages-Based and Not Considered a Penalty.

The Donnelly Act was modeled on federal antitrust statutes. Accordingly. the New York Court of Appeals has directed New York courts to follow federal antitrust law in its interpretation. *See XLO Concrete Corp. v. Rivergate*, 83 N.Y.2d 513.518, 611 N.Y.S.2d 786,789 (1994).

Courts interpreting federal antitrust law have been called upon to decide the exact issue presented by this appeal – whether the treble damages remedy constitutes a penalty.

-16-

Prior to the amendment of the Clayton Act to provide a uniform four year statute of limitations, courts determined the limitations period for antitrust claims by reference to the statutes of limitation for other types of claims. Beginning with the decision of Justice Holmes in *Chattanooga Foundry & Pipeworks v. City of Atlanta*, 203 U.S.390, 27 S.Ct 65 (1906), cited with approval, *Cox v. Lykes Bros.*, 237 N.Y. 376, 143 N.E. 226 (1924), courts generally rejected the argument that the limitations period for actions to recover a statutory penalty was applicable to antitrust treble damages actions.  See *Leh v. Standard Oil of California*, 330 F.2d 288 (9th Cir. 1964) (prior to enactment of Clayton Act limitations period, holding that antitrust treble damages action not strictly penal and declining to apply state law penalty action limitations period); *Englander Motors, Inc. v. Ford Motor Co.*, 293 F.2d 802 (6th Cir. 1961) (collecting cases and stating that the weight of authority is toward remedial nature of antitrust treble damages action); *Bertha Building Corp. v. National Theaters Corp.*, 269 F.2d 785 (2d Cir. 1959), discussed supra, (federal antitrust treble damages action not, under New York law, an action for a penalty imposed by statute).

More recently, in related contexts, courts have also rejected claims that the antitrust treble damages recovery constituted a penalty.  Instead, they have found that Congress provided for treble damages primarily for remedial purposes including ameliorating "the difficulty of proving antitrust damages," *Hydrolevel Corp. v. American Soc. of Mechanical Engineers, Inc.*, 635 F.2d 118,127 (2d Cir. 1980), aff'd, 456 U.S. 556, 102 S.Ct. 1935 (1982), and counterbalancing "the difficulty of maintaining a private suit against a combination ...." *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 485-86 (1977) (quoting 21 Cong.Rec. 2456 (1890) (Remarks of Sen. Sherman)).

-17-

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614 (1985), the Supreme Court held that in light of the primary purpose of the antitrust treble damages action–"to enable an injured competitor to gain compensation for that injury"– there was no reason why such a claim should not be arbitrated. The Court described the policing or penalizing function of the treble damages recovery, which would, at minimum, predominate if it were a penalty, as "incidental." In *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 485-86 (1977), the Supreme Court held that only those who suffer injury from the defendants' conduct can collect treble damages. In language which sharply contrasts the antitrust treble damages action from an action to recover a statutory penalty, the Court said that the "treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy." Similarly, in *Ethicon, Inc. v. Aetna Cas. & Sur. Co.,* 737 F.Supp.1320 (S.D.N.Y 1990), the court held that the treble damages provision was remedial and not penal or punitive for purposes of interpreting an insurance policy. See also *Commonwealth Edison Co. v. Allis Chalmers Manuf. Co.,* 210 F. Supp. 557 (N.D. Ill. 1962) (antitrust action not subject to strict rules of construction applicable to penal statutes.).

Accordingly, under both federal antitrust law and New York law, and consistent with the Legislature's intent in enacting CPLR §901(b) and the Donnelly Act amendment, an antitrust action for treble damages is not an action to recover a penalty imposed by statute. Thus, an antitrust class action under the Donnelly Act is not barred by §901(b).

-18-

III.    THE DONNELLY ACT'S STATUTE OF LIMITATIONS SHOULD BE
        TOLLED UNDER THE DOCTRINE OF FRAUDULENT CONCEALMENT.

Defendants, knowing full well that this Court has already ruled in the direct purchaser case

that the statute of limitations should be tolled by virtue of the concealment inherent in the alleged

price fixing conspiracy, nonetheless ask this Court to make a contradict its prior ruling and limit

the New York class members to four years of damages. This Court should either find that

Plaintiff has already adequately alleged fraudulent concealment or permit Plaintiff to amend the

complaint to include the allegations made by the direct purchaser plaintiffs.

In the direct purchaser action, when faced with the same motion Defendants make here,

this Court held that, under a number of cases decided by district courts in the Third Circuit, a

plaintiff may establish fraudulent concealment by alleging a conspiracy "which is by its very

nature self-concealing." *In Re Automotive Refinishing Paint Antitrust Litigation*, MDL Dkt. 1426

(E.D. Pa May 16, 2002) at 8-9. This Court denied the motion based on the direct purchaser

plaintiffs allegation of a pricefixing conspiracy with "secret meetings, timing the dates of price

increases to avoid detection, and disseminating misrepresentations concerning the reasons for

price increases." and plaintiffs' own lack of knowledge regarding the conspiracy. Consolidated

and Amended Class Action Complaint, *In Re Automotive Refinishing Paint Antitrust Litigation*,

¶¶55-56.

Here Plaintiff has alleged that Defendants engaged in price fixing conspiracy that began in

approximately 1993 and continued until the time the complaint was filed. That allegation is

sufficient to allege Defendants' concealment. Except for alleging that it did not know the exact

date of the commencement of the conspiracy. Plaintiff has not, however, explicitly alleged its own

lack of knowledge of the conspiracy.  Lack of knowledge of the conspiracy, is, of course is

implicit in Plaintiff's allegations particularly the allegations that Plaintiff made purchases of

automotive refinishing paint at prices higher than it would have paid in the absence of the

conspiracy.  Amended Antitrust Complaint and Jury Demand. ¶¶3.21.  If the Court finds that

Plaintiff's lack of knowledge must be more explicitly alleged, Plaintiff requests that the Court

grant Plaintiff leave to amend the complaint to add that allegation and any other allegations

necessary for the complaint to be considered sufficient.

IV.     THE 1998 DONNELLY ACT AMENDMENT PERMITS RECOVERY FOR
        CONDUCT THAT PRECEDED ITS ENACTMENT.

Defendants contend that Plaintiff cannot recover for damages they inflicted prior to the

1998 Donnelly Act amendment which provided indirect purchasers with standing to sue under the

Donnelly Act because the amendment does not apply retroactively.  But retroactivity is not the

issue because the amendment does not proscribe additional conduct or create additional liability –

it merely provides indirect purchasers with standing.  Even if retroactivity were the issue, the

Donnelly Act amendment should be given retroactive effect as a remedial statute pursuant to New

York law.

A.     Section 340(6) Permits Indirect Purchasers to Recover All Damages Regardless of
       its Retroactivity

The 1998 Amendment, GBL §340(6) provides as follows:

In any action pursuant to this section, the fact that the state, or any political subdivision or
public authority of the state, or any person who has sustained damages by reason of
violation of this section has not dealt directly with the defendant shall not bar or otherwise
limit recovery: provided, however, that in any action in which claims are asserted against a
defendant by both direct and indirect purchasers, the court shall take all steps necessary to
avoid duplicate liability, including but not limited to the transfer and consolidation of all
related actions. In actions where both direct and indirect purchasers are involved, a

defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages.

It was enacted in response to at least one lower court decision which held that recovery in Donnelly Act cases, as in federal antitrust actions, was limited to those who had dealt directly with the wrongdoers. *See Russo & Dubin v. Allied Maintenance Corp.*, 95 Misc. 2d 344, 348 (N.Y. Misc. 1978).

The amendment speaks in terms of lawsuits and standing – not in terms of conduct and liability. It says that in any Donnelly Act lawsuit, the fact that the plaintiff did not have direct dealings with the defendant shall not affect the plaintiff's recovery. Its potential retroactivity, accordingly, relates only to whether it applies to lawsuits filed prior to its enactment – not whether it applies to past conduct. Had the amendment been drafted in terms of liability – for example had it read "anyone who violates this section shall be liable for treble damages to any injured person without regard to whether there were direct dealings between them" – it would arguably have to have retroactive effect to apply to past events.   But as enacted, §340(6) simply provided indirect purchasers entry to the courthouse. It is silent on what they can recover once they step inside. There is, accordingly, no reason to consider its retroactive effect.

B.      Alternatively, §340(6) Should Be Given Retroactive Effect As A Remedial Statute.

Even if the amendment is interpreted to affect the extent of an indirect purchaser's recovery, §340(6) is a remedial statute which permits indirect purchasers to recover damages incurred prior to 1998.

Although New York law provides that statutes should generally be considered to only have a prospective effect, it does provide an exception for remedial statutes. Section 54 of New York

-21-

Statutes Law provides that: "[r]emedial statutes constitute an exception to the general rule that statutes are not to be given retroactive operation, but only to the extent that they do not impair vested rights."  The comment to Section 52 of the New York Statutes Law clarifies that

> "if an amendment provides a remedy for a wrong or enforcement of a right where none before existed, it is prospective, but if the right to recover existed before, and the amendment relates to procedure and merely prescribes a remedy, the amendment is retroactive."

The New York Court of Appeals further defines remedial as "designed to correct imperfections in prior law, by giving relief to [an] aggrieved party." *In the Matter of Arnold M. Asman v. Ambach*, 64 N.Y.2d 989, 991 (1985).

In this framework, it is clear that §340(6) was intended to be remedial.  As the legislative history discussed in Section I, supra, makes clear, the New York legislature believed that the prohibition against standing for indirect purchasers was a mistake and needed to be corrected. The amendment does not change the standards for liability under the Donnelly Act or the extent of a defendant's liability.  A defendant is still liable for anticompetitive conduct to the extent of the injury that the defendant has caused.  The amendment simply provides that indirect purchasers, who previously could only recover their damages indirectly through pass-downs of the damages awards by wholesalers and other direct purchasers, could now go into court recover their damages directly.  Notably, the amendment prevented an increase in a defendant's total liability by permitting a defendant who has paid damages to indirect purchasers with a defense against direct purchasers.

*Mendler v. Federal Ins. Co.*, 159 Misc. 2d 1099, 1103 (N.Y. Sup. Ct 1993) is almost directly on point.  The issue in that case was whether to give retroactive effect to an amendment to

-22-

Article 12 of New York's Navigation Act providing those injured by a discharge of petroleum in water with a cause of action under Article 12 of New York's Navigation Act. A court had recently interpreted the Navigation Act to deny a private cause of action. In response, the Legislature amended the statute. The court held that the amendment "is remedial in nature and is designated to clarify [the existence of the private right of action]. *Id.*

Other New York cases make clear that a statute which simply adds a class of persons to those who are entitled to recover is remedial and should be read prospectively. For example, in *Cady v. County of Broome*. 87 A.D.2d 964 (3d Dept. 1982). a New York statute provided certain benefits to police officers injured in the line of duty. When the statute was amended to expand the group of persons entitled to those benefits to include deputy sheriffs, the court concluded that the amendment should be applied retroactively. Similarly, in *Busch v. Austin Co.*. 37 A.D.2d 648 (3d Dept. 1971), the court held that an amendment to the Workers' Compensation statute which added disabled adult survivors to those who are entitled to death benefits should be applied retroactively. *See also McGuirk v. City School Dist.*, 116 A.D.2d 363, 365-366 (3d Dept. 1986)(new statute of limitations applied retroactively – "retroactivity need not be explicitly set forth in the statute.")

Defendants argue that the prospective effect of the amendment is evidenced by the Legislature's direction that the statute take effect "immediately". But Defendants are wrong, New York Courts have held that the Legislature indicates its clear direction of prospective application by providing a later effective date, *Deutsch v. Catherwood*. 31 N.Y.2d 487, 489 (1973), and that an immediate effective date can be evidence of remedial intent. *Cady v. County of Broome*, 87 A.D.2d 964 (3d Dept. 1982).

-23-

V.    PLAINTIFF'S §349 CLAIM IS SUFFICIENT.

Defendants contend that Plaintiff's claim under New York GBL §349 is insufficient because Plaintiffs have not alleged consumer oriented, deceptive conduct and because Plaintiff's claim is barred by the statute of limitations.[11]

But construed broadly, as is appropriate on a motion to dismiss, this claim is sufficient.

Small business owners, such as Plaintiff, are considered consumers for purposes of the statute. *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 338 F. Supp. 2d 422, 428 (E.D.N.Y. 2004)(Weinstein, J). This is especially true where the unlawful practices are not "confined to a private contract dispute between businesses" but are directed at a large number of affected entities. *Id.*

In addition, price fixing is a deceptive practice within the meaning of §349. The section is interpreted by reference to the definition of unlawful conduct under Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45. *New York v. Feldman,* 210 F. Supp. 2d 294,302 (S.D.N.Y. 2002). Section 5, in turn, has been consistently interpreted to forbid price fixing and other antitrust violations.  See *Times-Picayune Publ'g Co. v. United States,* 345 U.S. 594, 609, 97 L. Ed. 1277, 73 S. Ct. 872 (1953) (finding that liability under FTC Act and under Clayton and Sherman Acts is coextensive); *FTC v. Motion Picture Adver. Servs. Co., Inc.,* 344 U.S. 392, 395, 97 L. Ed. 426, 73 S. Ct. 361 (1953) (holding that conduct prohibited by Sherman Act automatically violates section 5 of the FTC Act); *United States v. St. Regis Paper,* 285 F.2d 607, 610 n.4 (2d Cir. 1960)("Any violation of the Sherman and Clayton Acts [is] also a violation of § 5 of the Federal Trade

─────────────────────────

[11] Defendants also contend that Plaintiff may not pursue a claim for treble damages under §349. Defendants are correct on this point and the complaint should be read to demand only actual damages for this claim.

Commission Act"); *In re Antibiotic Antitrust Actions.* 333 F. Supp. 317, 320 (S.D.N.Y. 1971)("well-established that § 5 of the FTC Act includes within its terms a wide variety of conduct, including conduct condemned by §§ 1 and 2 of the Sherman Act."

On this basis. a district court in the Southern District of New York upheld an analogous allegation that a bid-rigging conspiracy violated §349.  *New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002). *See also Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (1st Dept. 2004)(§349 violation based in part on alleged "secret agreements with computer manufacturers and distributors to inhibit competition."

As for Defendants' statute of limitations argument, fraudulent concealment tolls the limitation period for this claim as it does for the Donnelly Act claim. *M&T Mortg. Corp. v. Miller*. 323 F. Supp. 2d 405. 411 (E.D.N.Y. 2004).  For that reason. the alleged self-concealing price fixing conspiracy should be held to toll the limitations period for the §349 claim.

## CONCLUSION

Defendants' motion should be denied in all respects.[12]

DATED:    October 12, 2006
          New York, New York

                              GISKAN & SOLOTAROFF

By:                           JASON L. SOLOTAROFF
                              207 West 25th Street
                              New York, N.Y. 10001
                              Tel. (212) 847-8315
                              Fax. (212) 473-8096

                              Attorneys for Plaintiff

---

[12] The Settling Defendants move in the alternative for this Court to suggest to the MDL Panel that the case be remanded back to the Eastern District of New York. While Plaintiff is willing to litigate before either Court, Plaintiff is concerned that the matter has been delayed already by the recommendation of Judge Platt that the matter be transferred to this Court and the subsequent proceedings before the MDL Panel and does not wish further delay. Moreover, the prejudice claims of the Settling Defendants ring hollow. Regardless of whether they have already settled the direct purchaser proceeding, these parties will be litigating before some court and given this Court's familiarity with the issues in this case, it seems advisable that the case remain here for pretrial proceedings.

-26-